## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 16 2020, 8:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William Elliott Happel
Thomasson, Thomasson, Long & Guthrie, P.C.
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of: M.C., K.H. and T.H., Children in Need of Services:

B.H. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

December 16, 2020

Court of Appeals Case No.
20A-JC-1368

Appeal from the Bartholomew Circuit Court

The Honorable Kelly S. Benjamin, Judge
The Honorable Heather M. Mollo, Magistrate

Trial Court Cause Nos.
03C01-2001-JC-70
03C01-2001-JC-71
03C01-2001-JC-72

**Bradford, Chief Judge.**

# Case Summary

[1] B.H. ("Mother") is the biological mother of M.C., K.H., and T.H. (collectively, "the Children"). The Indiana Department of Child Services ("DCS") became involved with the family after receiving reports that the family had been evicted from their home, lacked stable housing, and was effectively homeless. On January 6, 2020, DCS filed petitions alleging that the Children were children in need of services ("CHINS"). The juvenile court subsequently found the Children to be CHINS. Mother appeals this determination. We affirm.

# Facts and Procedural History

[2] Mother is the biological mother of the Children. M.C. was born on August 4, 2003; K.H. was born on August 3, 2005; and T.H. was born on November 15, 2016. Mother has a history with DCS, including numerous allegations of educational neglect, dating back to 2003. On January 1, 2020, DCS again became involved with the family after receiving a report alleging that the Children were the victims of neglect. The report further alleged that the family lacked safe, stable housing after they were evicted from their home, effectively leaving the family homeless.

[3] On January 3, 2020, the Children were removed from Mother's care and placed into foster care. Three days later, on January 6, 2020, DCS filed petitions alleging that the Children were CHINS under Indiana Code section 31-34-1-1.

In addition to allegations of unstable housing, DCS alleged that (1) the Children suffered from educational neglect and often suffered from a lack of food, (2) Mother and her boyfriend engaged in domestic violence, (3) Mother's boyfriend smoked marijuana in the family's home, and (4) Mother neglected T.H.'s dental needs.

[4] After Mother made progress towards remedying some of the above-mentioned issues, the Children were returned to Mother's care on January 31, 2020. On February 11, 2020, DCS requested court approval of the Children's placement in a trial home visit with Mother. A few days later, on February 14, 2020, the juvenile court issued an order approving the Children's placement with Mother.

[5] The juvenile court conducted a CHINS factfinding hearing on March 2, 2020. Following the hearing, the juvenile court determined that the Children are "victims of educational neglect." Appellant's App. Vol. II p. 45. In reaching this determination, the juvenile court considered "school records from at least three school corporations," which outlined the efforts made by the Children's schools "to address poor attendance, unexcused absences, and tardies before seeking the intervention of the Court." Appellant's App. Vol. p. 45. The juvenile court found that Mother moved frequently "from the fall of 2018 until trial" and the Children's "school enrollment and attendance records make it clear that the children have not regularly attended school" and show "long gaps of [M.C.] and [K.H.] being unenrolled in school" and "excessive unexcused absences." Appellant's App. Vol. II p. 45.

[6]     With respect to M.C., the juvenile court found as follows:

> 10.     For the 2019-2020 school [year], [M.C.] had only attended two days at McDowell for a total of 6.5 hours of instruction.
>
> ****
>
> 17.     Mother testified that [M.C.] was expelled from school in October 2018 and was not enrolled and did not attend school in 2019.  Mother stated she attempted to enroll [M.C.] but was told to enroll her in an adult educational center.  [M.C.] did not enroll at McDowell Adult Education Center until February 2020.  As of this trial, [M.C.] has only attended McDowell for a total of 6.5 hours, and [M.C.] is not testing above a fourth grade level in any subject.  (Petitioner's Exhibit 15).

Appellant's App. Vol. II pp. 45–46.

[7]     With respect to K.H., the juvenile court found as follows:

> 9.     For the 2019-2020 school year, [K.H.] was not enrolled until November 2019.
>
> ****
>
> 11.     In the 2018-19 school year, [K.H.] was an eighth grade student and attended three schools.  There were gaps in enrollment between schools.
>
> 12.     [K.H.] began the 2018-19 school year enrolled at Central Middle School in Bartholomew County.  On September 18, 2018, [K.H.] was enrolled at Franklin Middle School in Johnson County and she remained there until October 29, 2018 when a transfer to Seymour Middle School was to occur.  (Petitioner's Exhibits 2, 10, and 13).

13.     [K.H.] was not enrolled at Seymour Middle School until November 13, 2018, resulting in a loss of eleven days of instruction. (Petitioner's Exhibits 10 and 13).

14.     [K.H.] remained enrolled at Seymour Middle School for the rest of the 2018-2019 school year. During that time, [K.H.] missed an additional ten days of school due to unexcused absences. (Petitioner's Exhibit 13).

15.     During the current 2019-2020 school year, [K.H.] was unenrolled until November 7, 2019. During that time [K.H.] missed approximately 60 days of instruction. (Petitioner's Exhibit 2).

16.     For her freshman year of school, [K.H.] was not enrolled until November 7, 2019. [K.H.] was enrolled at Columbus North High School, where she remained enrolled until she was taken into care by DCS in early January, 2020. During this period, [K.H.] missed an additional approximately 13 school days due to unexcused absences. (Petitioner's Exhibit 2).

Appellant's App. Vol. II p. 45.

[8]     With respect to T.H., the juvenile court found as follows:

18.     It is the school records of [T.H.] that best illustrate the efforts by various officials to address poor school attendance prior to this court's involvement.

19.     In reviewing Petitioner's Exhibit 6, [T.H.] attended Northwood Elementary School in Franklin, Indiana for the 3rd and 4th quarter of the 2017-18 school year. Northwood Elementary attempted to address attendance by sending notice of accumulating absences. On May 15, 2018, notice was sent that [T.H.] had accumulated 10 days of absences. Per the agreement

between Franklin Community Schools and Johnson County Community Corrections, [T.H.] was referred to the Family Resource Program in an effort to improve school attendance. The school provided written notice of this program and referral.

20. The school records show that a Referral Form was sent to the Family Resource Program and noted on the referral were other interventions by school officials. It is noted that on May 14, the school contacted the Department of Child Services due to concerns that [T.H.] was with his mother and had not been at school for 2½ weeks. (Petitioner's Exhibit 6).

21. [T.H.] began the fall 2018-19 school year at Custer Baker Elementary School, also within the Franklin Community Schools. [T.H.] entered the 2018-19 school year as a struggling student, having received "did not pass" on all subjects of his fourth grade standardized tests. (Petitioner's Exhibit 6).

22. During the 2018-19 school year, [T.H.] was a fifth grader enrolled at Custer Baker Elementary school from August 8 to November 8, 2018. (Petitioner's Exhibit 6).

23. By August 30, 2018, the school had sent written notice of absences of 7 days or more. (Petitioner's Exhibit 6).

24. By September 4, 2018, the school had sent written notice of absences of 10 days or more. (Petitioner's Exhibit 6).

25. On September 5, 2018, Custer Baker referred [T.H.] to Johnson County Community Corrections Family Resource Program, noting that [T.H.] had 19 absences at that time.

26. Absences continued and at the time of his departure on November 8, 2018, [T.H.] had missed a total of 31 school days due to unexcused absences. (Petitioner's Exhibit 6).

27. From November, 2018 through May 2019, [T.H.] attended

Margaret Brown Elementary School. [T.H.'s] attendance improved, but he continued to miss school due to unexcused absences periodically through the rest of the school year. [T.H.] missed an additional 11 school days at Margaret Brown Elementary due to unexcused absences. (Petitioner's Exhibit 13).

28. For the current 2019-2020 school year, [T.H.] was enrolled at Southside Elementary school. [T.H.] remained enrolled at Southside until November, 2019. During his time at Southside, Thomas missed 24 school days due to unexcused absences. (Petitioner's Exhibit 3).

29. It is of interest to note that within the school records, school officials spoke with mother on October 28, 2019 and learned that the family was moving to Greenwood with the plan of enrolling [T.H.] in Greenwood Middle School. Mother advised that she already had an appointment for enrollment. (Petitioner's Exhibit 3).

30. School records reflect that Southside officials spoke to Greenwood Middle School on October 29, 2019. Mother had no showed an 8:30 a.m. appointment that morning for enrollment. (Petitioner's Exhibit 3).

31. School records note an entry on November 1, 2019 that [T.H.] had still not been enrolled at Greenwood Middle School. (Petitioner's Exhibit 3).

32. Sometime in November 2019, [T.H.] enrolled at Schmidt Elementary School, another elementary school within Bartholomew County Consolidated School Corporation. [T.H.] missed an addition 9 days of school due to unexcused absences. (Petitioner's Exhibit 3).

33. It was the understanding of FCM Myers that mother had been offered the Attend Program through the Bartholomew County School Corporation but declined to participate. The

juvenile court is very familiar with the Attend Program and the court takes notice of its specialized knowledge in the instant case. The Attend Program is an alternative for a parent to avoid educational neglect criminal charges or a DCS CHINS case for failure to comply with the mandatory school attendance laws. The Attend Program monitors school attendance and offers supportive services to assist with any barriers a parent may have in getting a child to school. There is a community team that reviews the cases that should be referred to the Attend Program. Families are not referred until absences have become chronic. The failure to participate, without school attendance improvement, usually results in a formal filing in juvenile court of a Contributing to the Delinquency of a Minor charge or a CHINS filing for educational neglect.

Appellant's App. Vol. II pp. 46–47.

[9] Based on these findings, the juvenile court concluded that "[t]he coercive intervention of the Court is necessary to ensure that these children receive their education" and determined that the Children were CHINS. Appellant's App. Vol. II p. 47. In support of its determination, the juvenile court noted that

Mother has not taken advantage of three opportunities to participate in no-cost educational support programs offered through two separate school corporations. Letters from Principals regarding attendance concerns have gone without a sufficient response by mother. School attendance for the children is unlikely to improve unless compelled by a Court order.

Appellant's App. Vol. II p. 47. The juvenile court conducted a dispositional hearing on June 16, 2020, after which it ordered Mother to participate in certain services and continued the Children's placement in Mother's home.

# Discussion and Decision

[10] Mother contends on appeal that the evidence is insufficient to support the juvenile court's determination that the Children were CHINS.

> In reviewing a juvenile court's determination that a child is in need of services, we neither reweigh the evidence nor judge the credibility of the witnesses. *In re S.D.*, 2 N.E.3d 1283, 1286–1287 (Ind. 2014), *reh'g denied*. Instead, we consider only the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* DCS is required to prove by a preponderance of the evidence that a child is a CHINS. *In re A.H.*, 913 N.E.2d 303, 305 (Ind. Ct. App. 2009). When a court's order contains specific findings of fact and conclusions of law, we engage in a two-tiered review. *Id.* First, we determine whether the evidence supports the findings. *Id.* Then, we determine whether the findings support the judgment. *Id.* We reverse the juvenile court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if it is unsupported by the findings and conclusions. *Id.* When deciding whether the findings are clearly erroneous, we consider only the evidence and reasonable inferences therefrom that support the judgment. *Id.*

*In re C.K.*, 70 N.E.3d 359, 363 (Ind. Ct. App. 2016). Further, because Mother does not challenge the accuracy of any of the juvenile court's findings on appeal, we accept the juvenile court's factual findings as correct. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct.").

[11] In challenging the sufficiency of the evidence, Mother argues that the evidence is insufficient to prove that the Children's needs were not likely to be met

without the coercive intervention of the juvenile court. Specifically, she argues that continued intervention by the juvenile court and DCS constituted "an unwarranted intrusion into the family's life" because the concerns giving rise to DCS's interaction with the family had been resolved as she had secured stable housing, the Children were enrolled in school, and there were no concerns for the Children's safety while in her care. Appellant's Br. p. 10. We disagree.

[12] A child is a CHINS if, before the child turns eighteen,

> the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision:
>
>> (A) when the parent, guardian, or custodian is financially able to do so; or
>>
>> (B) due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so[.]

Ind. Code § 31-34-1-1(1). Evidence of educational neglect and the need for court intervention to ensure that the Children's needs are met is sufficient to support a CHINS determination. *See Matter of Eq.W.*, 106 N.E.3d 536, 543 (Ind. Ct. App. 2018), *aff'd in relevant part by Matter of Eq.W.*, 124 N.E.3d 1201, 1215 (Ind. 2019).

[13] The juvenile court's unchallenged findings, which are supported by the State's evidence, demonstrate that the Children are the victims of educational neglect

and court intervention is necessary to ensure that they receive their education. The record reveals that DCS has received numerous allegations of educational neglect by Mother dating back to 2013. The record further reveals that Mother has repeatedly resisted efforts by DCS and rejected free assistance aimed at helping to ensure that the Children receive a consistent access to education. Thus, even though the Children were enrolled in school at the time of the factfinding hearing, the juvenile court could reasonably infer from the overwhelming evidence that Mother would be unwilling to ensure that the Children were consistently enrolled in and attending school without court intervention. As such, we conclude that the evidence is sufficient to support the juvenile court's determination that the Children are CHINS.[1]

[14] The judgment of the juvenile court is affirmed.

Kirsch, J, and May, J., concur.

---

[1] Furthermore, while not relied on by the juvenile court in finding that the Children were CHINS, the record reflects that, as of June 2020, the family's housing situation remained unstable. While the evidence established that Mother had rented a home and secured housing prior to the factfinding hearing, the juvenile court heard testimony during the June 16, 2020 dispositional hearing that the family had to move out of the home "by the end of the month" because, according to Mother, "the house [was] condemned." Tr. Vol. II p. 97.