


FILED

Jun 27 2019, 12:14 pm

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

I N   T H E

# Indiana Supreme Court

Supreme Court Case No. 18S-JC-603

## In the Matter of Eq.W., M.W., A.W., S.W., and Ez.W. (Minor Children); V.B. (Mother),

*Appellant,*

—v—

## Indiana Department of Child Services,

*Appellee.*

---

Argued: January 24, 2019 | Decided: June 27, 2019

Appeal from the Monroe Circuit Court
Nos. 53C06-1711-JC-851, 53C06-1711-JC-852, 53C06-1711-JC-853,
53C06-1711-JC-854, 53C06-1711-JC-855
The Honorable Frances G. Hill, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 18A-JC-555

---

### Opinion by Justice David

Chief Justice Rush and Justice Goff concur.
Justice Slaughter concurs in part and in the judgment with separate opinion in
which Justice Massa joins.

**David, Justice.**

This case shines a spotlight on the precarious nature of CHINS proceedings and emphasizes the need to draw measured and appropriate procedural boundaries in these actions. Our Court has frequently weighed in on the delicate balance between the State's authority to provide protection for children's health, safety, and stability and the procedural safeguards put in place to protect parents from State overreach. One procedural issue that has evaded our review, however, is whether the State may file repeated petitions alleging children are CHINS without any new or substantially different evidence.

In this case, the Department of Child Services filed an initial petition alleging five Children were CHINS but failed to present sufficient evidence of Parents' alleged substance abuse. After a fact-finding hearing, the trial court dismissed the case without prejudice and DCS filed a second petition containing nearly identical allegations the day after the first petition was dismissed. After considering evidence and testimony that could have been presented during the first proceeding, the Children were ultimately adjudicated CHINS.

The central issue we address in today's opinion is whether, in light of the nature of CHINS proceedings, the doctrine of res judicata—and more specifically claim preclusion—applies to bar a repeated filing of a CHINS petition based on evidence that could have been produced in the first filing. We find that the doctrine does apply in these proceedings, but because the issue was not properly raised in the trial court and because we find no fundamental error in the proceedings below, we affirm the trial court's finding that the Children are CHINS.

## Facts and Procedural History

Mother (V.B.) and Father (L.S.) have five children: Eq.W., M.W. (also referred to as M.B. throughout the filings), A.W., S.W., and Ez.W. (collectively "Children"). On June 27, 2017, the Bloomington Police

Department responded to reports of Mother "wildly swinging [Ez.W.] in her arms" near the Fountain Square Mall. (Appellant's App. Vol. II at 24, 27). When police arrived, the three youngest children, A.W., S.W., and Ez.W., were with Mother and Father; A.W. and S.W. did not have shoes on their feet. As police approached the family, Mother and Father began to walk away. Police observed that Mother was unstable and almost fell with Ez.W. in her arms. When police searched Mother's belongings, the officers found a hatchet and two different types of baby formula but no bottle. The police requested assistance from the Department of Child Services ("DCS") after the officers detained Mother and Father for suspected intoxication. DCS removed the Children from Mother and Father and placed them with their paternal grandmother.

DCS filed a petition alleging the Children were CHINS on June 29, 2017 (hereinafter "first petition").[1] In primary support of its petition, DCS alleged the following material facts:

- Mother and Father were both impaired on June 27 with children in their care.
- Two of the children were not wearing shoes.
- Along with formula, a hatchet was found in the diaper bag. No bottle was located.
- Mother was impaired when speaking with a DCS case manager and could not give a complete statement.
- The paternal grandmother (with whom the children were placed) reported her belief that Mother and Father were using substances because of recent changes in behavior.

---

[1] DCS alleged the Children were CHINS under Indiana Code section 31-34-1-1, which provides that a child under eighteen years of age is a CHINS if "the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision" and the child is not receiving care, treatment, or rehabilitation that is "unlikely to be provided or accepted without the coercive intervention of the court."

- Two of the children reported a recent escalation in arguing between Mother and Father; one of those children suspected this was due to substance abuse.
- Mother and Father were arrested and charged with neglect of a dependent and public intoxication.
- A prior CHINS case was initiated due to alleged substance abuse by Mother and Father.

At a September 12, 2017, fact-finding hearing, the court heard evidence and granted DCS's motion to continue the hearing to present expert testimony of Parents' drug screens. During the subsequent hearing on October 25, 2017, however, the court denied DCS's motion to present telephonic testimony of a drug screen expert. DCS offered no additional evidence.

On November 7, 2017, the court dismissed the first petition without prejudice and, in doing so, denied Mother's motion to dismiss with prejudice. In considering the testimony of the arresting officer and the DCS case manager that Mother and Father were visibly impaired, the court noted that neither the officer nor the case manager requested a drug screening for either of the parents after the arrest. Although the Parents received a drug screening at their detention hearing, DCS did not offer evidence of the test results after the court denied its motion for telephonic evidence. The court ultimately concluded that DCS failed to present sufficient evidence to meet the preponderance of evidence standard required for a CHINS determination. While the court agreed it was appropriate to remove the Children at the time of the arrest, it could not find "any signs of abnormality by Mother [that] were sufficient to show [] she was impaired by drug use to the extent she was endangering the children." (Appellant's App. Vol. II at 177). The court also concluded that "[a]llegations from [the first petition] may be combined with future allegations of neglect (or endangerment by illegal drug use) as evidence of the element of the need for the 'coercive intervention of the court.'" (Id.)

On November 8, 2017—the day after the dismissal of the first petition—DCS filed another petition (hereinafter "second petition") alleging the five

Children were CHINS.  The second petition relied on these alleged material facts:

- Mother and Father had prior involvement with the DCS, including a case that ended in May of 2017.  Children were removed from Father's care due to substance abuse and the family was reunified after Mother successfully completed services.
- DCS was also involved with the family in November 2016 when Mother gave birth to the youngest child in the family's home. Mother admitted to heroin use during her pregnancy.
- Parents were arrested on June 27, 2017, for appearing to be intoxicated while caring for the children.
- Additional evidence of neglect had been obtained by the DCS following the dismissal of the first petition.
- Mother and Father both tested positive for methamphetamine multiple times during the pendency of the most recent CHINS case. Parents also failed to attend multiple drug screenings.
- Mother failed to follow protocol during a September 19, 2017, screening, her behavior was erratic and threatening, and the drug screen was positive for methamphetamine. The drug screener felt unsafe while administering the test.
- Father tested positive for methamphetamine during a September 26, 2017, drug test.
- Father became agitated and left an October 19, 2017, Child and Family Team Meeting.
- Around October 4, 2017, Parents indicated they were having difficulty paying bills; their electricity and water were shut off.
- Parents had a drug-related criminal history.

In authorizing the filing of this CHINS petition, the court also determined continued placement of the children with their paternal grandmother was necessary to protect the children.[2]

At the contested fact-finding hearing, DCS called several witnesses to offer testimony regarding the educational achievement of the Children. M.W. and Eq.W. each testified that they had not attended school in five years. Specifically, M.W. noted he received some sort of home schooling, but never learned any math. Paternal Grandmother testified that she worked to enroll several of the Children in schools and arranged tutoring services because she was concerned with preparing the older children for adulthood. Additionally, a DCS caseworker expressed concerns about how S.W. did not know his alphabet or how to write his name at nine years old.

On January 3, 2018, the court adjudicated all five Children as CHINS. In reaching this conclusion, the court found that Parents had failed to provide necessary shelter, education, food, and supervision for the Children. While "the CHINS Petition did not allege material facts of failure to provide education, food, or safe housing, even though the DCS did generally plead those issues by including the statutory language of CHINS neglect in IC 31-34-1-1," the court found it could not "ignore the clear presentation of evidence of neglect of education (5 years without school for the older children) and unsafe housing due to exc[]essive clutter and unsupervised strangers wandering in the home." (Appellant's App. Vol. II at 62). The court also noted that Parents were placed on notice of these issues and failed to object to any testimony regarding education and housing conditions. The court ordered that the Children remain with their paternal grandmother. Only Mother appealed.

---

[2] We note that this order authorizing the filing of a second CHINS petition and the continued detention of the Children was signed and dated on November 7, 2017—the same day the first petition was dismissed. Curiously, DCS did not file its second verified petition alleging the children to be CHINS or its request for continued custody until November 8, 2017. However, the record is unclear as to whether these two documents were offered as exhibits at the time the first petition was dismissed.

In a unanimous decision, the Court of Appeals affirmed the trial court. *Matter of Eq.W.*, 106 N.E.3d 536, 543 (Ind. Ct. App. 2018), *vacated in part, aff'd in part*. The court found Mother waived her argument that res judicata should have applied to bar the second petition, found no reversable error in the Children's continued placement with their paternal grandmother after the first petition was dismissed, and found Mother impliedly consented to the issue of educational neglect coming up during the fact-finding hearing. *Id*. at 540-41. While finding sufficient evidence to support the CHINS adjudication, the Court of Appeals also specifically admonished DCS for the way in which it litigated this case. *Id*. at 543.

Mother petitioned for transfer, which we granted. Ind. Appellate Rule 58(A).[3]

# Standard of Review

In all CHINS proceedings, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012) (quoting *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010)). When reviewing a CHINS adjudication, "we do not reweigh evidence or judge witness credibility" and will reverse a determination only if the decision was clearly erroneous. *In re D.J.*, 68 N.E.3d 574, 577-78 (Ind. 2017). "A decision is clearly erroneous if the record facts do not support the findings or if it applies the wrong legal standard to properly found facts." *Id*. at 578 (internal quotation omitted).

# Discussion and Decision

Today we address three central questions that have been raised for our review. First, we examine whether res judicata applies in the context of a CHINS proceeding. Second, we determine whether Mother preserved her

---

[3] To the extent the Court of Appeals found sufficient evidence to support each of the CHINS adjudications, we summarily affirm that portion of the opinion. *See* Ind. Appellate Rule 58(A)(2).

res judicata claim for appellate review.  Finally, if Mother did not preserve her claim, we must decide whether a court in a CHINS proceeding commits fundamental error by failing to *sua sponte* apply the doctrine of res judicata.  Each of these issues will be discussed in turn.

In short, we find that the claim preclusion branch of res judicata applies to CHINS proceedings.  Specifically, if the State wishes to refile after a CHINS petition is dismissed, it must show that the new CHINS petition contains allegations of material fact that could not have been included in the dismissed action.[4]  Further, we also find that Mother failed to preserve this issue for appellate review and that the trial court did not commit fundamental error.  As such, we ultimately affirm the trial court's judgment.

# I.  The doctrine of res judicata applies in CHINS proceedings.

We turn first to whether the doctrine of res judicata applies in the context of a CHINS proceeding.  Because we can find no decisional caselaw in our state specifically applying this doctrine in a CHINS context, we must first explore the doctrine to better understand its breadth and application.  We next examine the nature of a CHINS proceeding to see if res judicata harmonizes with the overall purpose of these proceedings.  Finding that res judicata does apply in a CHINS proceeding, we will outline its scope and application.

We begin with an overview of the doctrine of res judicata.  Generally speaking, res judicata operates "to prevent repetitious litigation of

---

[4] As discussed in greater detail below, we wish to make clear that not every subsequent CHINS filing by the State is necessarily barred by res judicata.  For example, we can envision circumstances under which the State moves to dismiss a petition before a fact-finding hearing but is forced to later refile the petition due to information that could not have been reasonably discovered at the time of the first filing.  One of the essential elements of claim preclusion is that the prior judgment was rendered on the merits.  *See Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 993 (Ind. 2014).  So, unless the prior action was terminated on the merits, claim preclusion is arguably inapplicable.

disputes that are essentially the same, by holding a prior final judgment binding against both the original parties and their privies." *Becker v. State*, 992 N.E.2d 697, 700 (Ind. 2013). This doctrine applies "where there has been a final adjudication on the merits of the same issue between the same parties." *Ind. State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 993 (Ind. 2014) (quoting *Gayheart v. Newnam Foundry Co., Inc.*, (1979) 271 Ind. 422, 426, 393 N.E.2d 163, 167). Similar to double jeopardy in the criminal context, res judicata operates to prevent a party from receiving the proverbial "second bite at the apple." *See Garrett v. State*, 992 N.E.2d 710, 721 (Ind. 2013); *Burks v. United States*, 437 U.S. 1, 17, 98 S. Ct. 2141, 2150, 57 L.Ed.2d 1 (1978).

There are two branches of res judicata: claim preclusion—which has been raised in the present dispute—and issue preclusion. *First Am. Title Ins. Co. v. Robertson*, 65 N.E.3d 1045, 1050 (Ind. Ct. App. 2016). Claim preclusion can be used to bar a successive lawsuit when "a particular issue is adjudicated and then put in issue in a subsequent suit on a different cause of action between the same parties or their privies." *Ind. Alcohol & Tobacco Comm'n v. Spirited Sales*, 79 N.E.3d 371, 381 (Ind. 2017) (citation omitted). Before a court can find that claim preclusion applies to bar a subsequent action, four essential elements must be met:

> (1) The former judgment must have been rendered by a court of competent jurisdiction;
> (2) The former judgment must have been rendered on the merits;
> (3) The matter now in issue was or might have been determined in the former suit; and
> (4) The controversy adjudicated in the former suit must have been between the parties to the present action or their privies.

*Ind. State Ethics Comm'n,* 18 N.E.3d at 993.

As one of our colleagues on the Court of Appeals recently noted, this doctrine "undoubtedly performs functions essential to the success of our American legal system" because it prevents the type of repeated litigation

"that would keep parties in interminable conflict, bog down our system, and delay or prevent the administration of justice." *State v. Stidham*, 110 N.E.3d 410, 421 (Ind. Ct. App. 2018) (May, J., concurring in result). And we agree. Res judicata is an important tool possessed by litigants and courts alike in quickly resolving repetitive attempts at litigation. At minimum, it appears to us that this doctrine is an essential part of civil procedure. But does the unique nature of a CHINS proceeding allow for stringent application of claim preclusion to bar the State from taking multiple bites at the same apple?

To answer that question, we pause to briefly review the nature of these proceedings. CHINS proceedings are civil actions. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). As such, parties to CHINS proceedings are bound by the Indiana Rules of Trial Procedure and generally have all the rights and duties prescribed thereunder. Ind. Code § 31-34-9-7. But we have also recognized that CHINS proceedings carry a significant potential to "interfere with the rights of parents in the upbringing of their children." *In re K.D.*, 962 N.E.2d at 1258 (quoting *In re N.E.*, 919 N.E.2d 102, 108 (Ind. 2010)). Accordingly, due process concerns at all stages of a CHINS proceeding are of paramount concern. Indeed, "procedural irregularities … in a CHINS proceeding may be of such import that they deprive a parent of procedural due process with respect to a potential subsequent termination of parental rights." *Id*. (quoting *In re J.Q.,* 836 N.E.2d 961, 967 (Ind. Ct. App. 2005)).

Because "[t]he purpose of a CHINS adjudication is to protect children, not punish parents," *id.* (citations omitted), both the legislature and our courts have instituted significant procedural safeguards in this context—some of which go beyond our Rules of Trial Procedure—to protect both the safety of children and the integrity of the family unit. *See, e.g.*, Ind. Code § 31-32-1-4 (requiring notice of CHINS proceedings to all parties); Ind. Code § 31-32-2-3 (giving parents the right to cross-examine witnesses, obtain witnesses and evidence by compulsory process, and introduce evidence); *In re G.P.*, 4 N.E.3d 1158, 1163-64 (Ind. 2014) (finding, *inter alia*, that Ind. Code § 31-34-4-6 provides a statutory right to court appointed counsel for a parent in a CHINS case if the parent requests the appointment of counsel and the trial court finds the parent to be indigent);

*In re T.N.*, 963 N.E.2d 467, 469 (Ind. 2012) (holding due process requires a court to conduct a fact-finding hearing when one parent admits a child is a CHINS and the other parent wishes to deny that status). It is apparent that Indiana places extra emphasis on these proceedings and urges parties to cautiously and meticulously move through each stage of a CHINS proceeding.

The State argues that the answer to the question of whether res judicata applies in a CHINS proceeding—at least in this case—is a resounding no. In support of its position, the State leans on codified juvenile law and the Indiana Rules of Evidence to make the point that CHINS proceedings are different than other types of actions. That is to say evidence of parents' past involvement with DCS or the criminal justice system is usually relevant to the central question of a CHINS proceeding. To be certain, Indiana Code section 31-34-12-5 provides:

> Evidence that a prior or subsequent act or omission by a parent, guardian, or custodian injured or neglected a child is admissible in proceedings alleging that a child is a child in need of services to show the following:
>   (1) Intent, guilty knowledge, the absence of mistake or accident, identification, the existence of a common scheme or plan, or other similar purposes.
>   (2) A likelihood that the act or omission of the parent, guardian, or custodian is responsible for the child's current injury or condition.

At first blush, this statute supports the State's position that a parent's prior acts are relevant to that parent's fitness at the time of a CHINS proceeding. *See Matter of M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996) (finding that, albeit during a termination of parental rights hearing, courts should judge a parent's fitness at the time of the hearing and should consider habitual patterns of conduct to determine probability of future neglect or deprivation).

Indeed, some Indiana courts have found that when children are alleged to be CHINS under Indiana Code section 31-34-1-1, which is the

statute relied upon in the present case, a parent's character is a material issue in the proceeding. *Matter of J.L.V., Jr.*, 667 N.E.2d 186, 190 (Ind. Ct. App. 1996).[5] To that end, the court in *Matter of J.L.V., Jr.* reasoned Indiana Rule of Evidence 405(b)[6] allows admission of specific instances of a parent's character because "a parent's past, present, and future ability to provide sufficient care for his or her child forms the basis for a CHINS adjudication" and "a parent's character is an integral part of assessing that ability." *Id.* at 190-91. Taken together, the State advances a colorable argument that CHINS proceedings are distinct enough from ordinary civil proceedings such that evidence of a parent's prior acts is pervasively relevant to all potential future CHINS proceedings involving the parents and children.

We agree with the State's general position that past acts by parents can be relevant to new CHINS filings involving the same parents and children. There are several compelling reasons to stand by this approach, none clearer than the legislature's express approval of this practice. *See* Ind. Code § 31-34-12-5. Additionally, as discussed above, the nature of a CHINS proceeding is such that a trial court must consider a broad range of evidence to ensure the State has met its burden in proving its case, including "consider[ing] the family's condition not just when the case was filed, but also when it is heard." *In re D.J.*, 68 N.E.3d 574, 580 (Ind. 2017) (citation omitted). But we also think that this procedure is ripe for potential abuse by the State. The dispute before us today emphasizes this point.

Here, DCS filed its first petition alleging the Children were CHINS on June 27, 2017. Distilled to its essential material facts, the petition was based on Mother and Father's alleged impairment, prior DCS involvement

---

[5] *Matter of J.L.V., Jr.* examined a substantially similar version of Indiana Code section 31-34-1-1 that existed prior to the recodification of Title 31. *See* 1997 Ind. Acts 315 (recodification). That version was codified at Indiana Code section 31-6-4-3(a).

[6] Indiana Rule of Evidence 405(b) provides: "When a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct."

due to substance abuse, and Parents' ultimate arrest while several of the Children were in their presence. Because DCS's motion to present telephonic testimony of Parents' drug screen results was denied and because DCS apparently presented no other evidence to the court, the first petition was dismissed for the State's failure to meet its burden of proof. The very next day, DCS filed its second petition that contained **no additional allegations that would have occurred after the October 25, 2017, fact-finding hearing on the first petition.**

To us, this case screams out as an obvious "second bite at the apple." The fact of the matter is that DCS failed to present sufficient evidence to meet its burden of proof on the first go–round. While the record is unclear as to why the trial court allowed the second petition to be filed, the court specifically denied Mother's request for dismissal with prejudice and noted that the allegations of the first petition could be combined with **future allegations** as evidence of the need for coercive court intervention. DCS plainly failed to follow this instruction and filed a second petition with essentially the same allegations as its first petition. While we understand the pressures placed on DCS to protect the safety and well-being of children in our state, we can in no way endorse the procedural tactics employed in this case to essentially string out the CHINS proceeding until enough evidence was collected, all the while keeping the children separated from their parents. There is simply too much at stake to condone these actions.

We hold today that the claim preclusion branch of res judicata applies to CHINS proceedings. We extend this basic principle to these proceedings in large part because of the heightened due process protections we give to children and parents involved in CHINS proceedings. For example, invocation of this doctrine could prevent repeated filings by DCS with no new factual basis until one petition finally sticks. It could also prevent repetitive litigation of issues that have been or **could have been** decided in an initial CHINS filing. As such, application of this doctrine to CHINS proceedings encourages DCS to fully investigate and present a more complete picture of the type of alleged conduct underpinning a CHINS petition. After all, trial courts certainly do not suffer when an issue is fully briefed and supported by evidence.

That is not to say application of res judicata in a CHINS proceeding is without limits. We stand by the proposition that, "[b]y their very nature, [CHINS] cases do not fit neatly defined guidelines." *In re K.D.*, 962 N.E.2d at 1255. DCS must necessarily rely on the past actions of parents to give a trial court the full story of why a CHINS petition was filed in the first place. But to escape the preclusive effect of res judicata in a CHINS proceeding, the State's subsequent petition must include new allegations of material fact separate from what was available to DCS to use at the original fact-finding hearing.[7] This new evidence will necessarily include allegations of new material facts that took place in time after the relevant CHINS petition was dismissed.

In our view, this rule bridges the gap between reliable application of claim preclusion and the unique nature of CHINS proceedings. Parties seeking to bar a subsequent CHINS petition on claim preclusion grounds must still demonstrate each of the four elements of claim preclusion we mentioned above. *See Ind. State Ethics Comm'n*, 18 N.E.3d at 993 (outlining the four elements of claim preclusion). But in examining the third element of claim preclusion—that the matter at issue was, or could have been, determined in the prior action—courts must also consider the rule we have enunciated today.

Practically speaking, if the parent or guardian is successful in showing claim preclusion applies to bar a subsequent petition, the CHINS petition must be dismissed. However, this dismissal does not mean the State is forever barred from filing a subsequent CHINS petition or even from using a parent's prior actions as evidence in support of a new filing. As long as there are no other procedural bars to the filing and the State demonstrates that the subsequent petition contains new allegations of

---

[7] *See Matter of J.R.*, 98 N.E.3d 652, 655 (Ind. Ct. App. 2018) (finding that, when a CHINS petition should have been dismissed for failure to complete a factfinding hearing within the statutory timeframe, DCS could refile the petition, but "would not be able to rely solely on the evidence that was admitted at the original CHINS factfinding" and instead "would have to also submit new evidence regarding the conditions at the current time").

conduct that took place after the dismissal of the prior proceeding, the State may file a new CHINS petition.

Having determined that claim preclusion applies to CHINS proceedings, we now consider whether this issue was properly placed before the trial court for its consideration.

## II. Mother failed to raise this issue in the trial court.

The State contends that, even if res judicata does apply in this context, Mother did not preserve this issue for our review because she failed to raise the issue in the trial court. Mother's primary argument on this point is that no motion was required. In other words, Mother believes a trial court does not have discretion to ignore res judicata. In the alternative, Mother argues that her closing argument during the fact-finding hearing on the second petition should be construed as a motion to dismiss. We will address each of Mother's arguments in turn.

Mother urges us to find a "trial court … does not have discretion to ignore the doctrine of res judicata." *M.G. v. V.P.*, 74 N.E.3d 259, 263 (Ind. Ct. App. 2017). In other words, Mother would have us hold that a trial court must look beyond the parties' pleadings, filings, and motions and *sua sponte* dismiss a CHINS petition if it perceives the new filing is precluded by a prior adjudication. We decline to hold as much and find that the issue must be raised by a party to the proceeding so as to bring it to the court's attention for review. Once the issue is raised and proven, a court does not have discretion to ignore the doctrine of res judicata. This finding held true in *M.G.*, the case Mother uses in support of her primary position, where the parties put the trial court on notice that a third consecutive protective order petition should have been dismissed on res judicata grounds. *Id*. at 264.

Our holding on this point also finds support in the general structure of CHINS proceedings. Although the burden of proof rests on the State to prove the basic elements of CHINS allegations, "each parent has the right to challenge those elements." *In re K.D.*, 962 N.E.2d at 1254. As such, Mother had at least some cognizable responsibility to challenge the

CHINS petition on res judicata grounds. Furthermore, to require the trial court to rule from the bench on this issue without the benefit of advocacy from either party would deprive reviewing courts of an adequate record from which to assess the issue. We entrust trial courts with many responsibilities and decline to add one more requirement to this list, especially when attorneys are present to keep the court informed of all potential issues.

Having found no requirement that trial courts must address res judicata issues *sua sponte*, we turn to Mother's next argument that, during her closing argument at the second fact-finding hearing, she in fact did argue the petition should be barred on res judicata grounds. In relevant part, Mother argued:

> The end of June the children were removed and the parents requested a contested fact-finding hearing. They didn't get it until September … where DCS put on evidence and then was allowed to continue it for another month until the end of October and they said that they were gonna bring more evidence because they hadn't put on enough. [T]hey came back and didn't put on any new evidence and the Court dismissed the CHINS petition and DCS immediately refiled and said there was gonna be new evidence that would be presented that had come to light … in the time since they have lost their initial petition…. [We] are supposed to be hearing that new evidence of … what circumstances have changed since we were here in September and DCS failed to prove their case the first time … I [don't] think we've heard any new information.

(Tr. at 71-72). It is difficult for us, however, to recognize a motion from these closing arguments and we do not expect the trial court would have been able to extrapolate a motion from this argument either.

Nevertheless, Mother asks our Court to not elevate form over substance and construe her closing argument as an oral motion to dismiss the petition based on claim preclusion. As we have previously said, CHINS proceedings are civil in nature and are thus governed by the Indiana

Rules of Trial Procedure. Ind. Code § 31-34-9-7. In relevant part, Trial Rule 7(B) provides that "[u]nless made during a hearing or trial, or otherwise ordered by the court, an application to the court for an order shall be made by written motion. The motion shall state the grounds therefor and the relief or order sought." While the best practice is to file a written motion with the court, Trial Rule 7(B) contemplates that parties have the ability to make oral motions during a hearing or trial. However, Trial Rule 7(B) requires that no matter whether written or made orally, a motion must state the grounds of the motion and the relief or order sought. *See Moore v. Indiana*, 999 F.2d 1125, 1131 (7th Cir. 1993) (finding under Federal Rule of Civil Procedure 7(b) that "[a]ll motions…must set forth with particularity the relief or order requested and the ground supporting the application"). Mother did not meet that threshold in this case.

We further note that res judicata is usually an affirmative defense under Trial Rule 8(C). Under that rule, parties seeking to invoke the doctrine of res judicata must do so in a responsive pleading. However, the structure of an initial hearing in a CHINS action is not conducive to responsive pleadings. Indiana Code chapter 31-34-10 sets forth the parameters of initial hearings. At this hearing, the trial court informs the parties of several important rights, duties, and procedural requirements. *See* Ind. Code §§ 31-34-10-4, -5. One critical duty of the court is to "determine whether the parent, guardian, or custodian admits or denies the allegations of the [CHINS] petition." Ind. Code § 31-34-10-6. The statute further provides, "**A failure to respond** constitutes a denial." *Id*. (emphasis added). When allegations are denied, the matter is set for a fact-finding hearing. Ind. Code § 31-34-11-1. *See also In re K.D.*, 962 N.E.2d at 1255.

In our view, the statute outlining the procedure for initial hearings gives protections to parents who do not respond—whether by affirmative choice or by neglecting to do so—to the allegations set forth in a CHINS petition by automatically requiring that the matter move to a fact-finding hearing in front of the court. Thus, it does not appear there is a requirement that a parent must file a responsive pleading. *See generally Matter of K.P.G.*, 99 N.E.3d 677, 681 (Ind. Ct. App. 2018) (stating there was

no requirement for a responsive pleading in an action where Mother contested personal jurisdiction under Trial Rule 12(B)(2)). Still, the best practice for the moving party is to move for dismissal on res judicata grounds at the earliest opportunity.[8]

At any rate, we find that Mother failed to move for dismissal on res judicata grounds. As such, this issue is waived on appeal. *See Brewington v. State*, 7 N.E.3d 946, 974 (Ind. 2014) (citation omitted). But whenever possible, this Court "prefer[s] to resolve cases on the merits instead of on procedural grounds like waiver." *Hale v. State*, 54 N.E.3d 355, 359 (Ind. 2016) (quoting *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015)). Having determined that res judicata applies to CHINS proceedings and finding Mother waived this issue on appeal, we will examine whether the trial court's failure to address the res judicata issue constituted fundamental error.

## III. The trial court did not commit fundamental error by failing to address the issue of res judicata.

On rare occasions, appellate courts may analyze an issue under the fundamental error doctrine to examine an otherwise procedurally defaulted claim. *Jewell v. State*, 887 N.E.2d 939, 942 (Ind. 2008). However, this review is extremely narrow and "available only when the record reveals a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and which violation is so prejudicial to the rights of the defendant as to make a fair trial impossible." *Id*. We must review the alleged misconduct in the

---

[8] As we have already established, if a party moves for dismissal on res judicata grounds during a hearing, Trial Rule 7(B) allows for the motion to be made orally. If a party makes an oral motion, however, we urge the trial court to ensure that "(1) the motion is on the record, (2) the parties are present or promptly notified of the motion, and (3) the motion—including whose it is—is clearly reflected on the chronological case summary ("CCS")." *In re Adoption of J.R.O.*, 95 N.E.3d 73, 74 (Ind. 2018) (Rush, C.J., dissenting from denial of transfer). This practice helps create a clear record, which is essential for appellate review. *Id*. (citing *James v. State*, 716 N.E.2d 935, 941 (Ind. 1991)).

context of all that happened in the proceeding and all the relevant information presented to the court.  *See Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014).

Examining the case before us, we ultimately conclude there was no fundamental error.  We subscribe to the idea that "[a] finding of fundamental error essentially means that the trial judge erred … by not acting when he or she should have, even without being spurred to action by a timely objection."  *Brewington*, 7 N.E.3d at 974 (internal quotations and citation omitted).  Certainly, "[a]n error blatant enough to require a judge to take action *sua sponte* is necessarily blatant enough to draw any competent attorney's objection."  *Id*.  Having found no requirement today that a trial court must *sua sponte* address perceived res judicata issues in CHINS proceedings, we cannot now say the trial court committed fundamental error by failing to do so.

As such, the judgment of the trial court is affirmed.

## Conclusion

As a final point, we re-emphasize the critical importance of the procedural safeguards put in place at every stage of a CHINS proceeding.  We in no way condone the repetitive filing put into issue in the present action.  We expect a lot out of attorneys in our state and hold DCS to the same standard of practice as attorneys in other civil proceedings.  We are confident that DCS can do better to protect the integrity of these proceedings and clamp down on repetitious filings, especially when it has the opportunity to present detailed evidence to the trial court and bring about a quick and fair disposition on the first try.

To summarize our decision today, we find that the claim preclusion branch of res judicata applies in the context of a CHINS proceeding.  Because Mother failed to adequately raise this issue in the trial court, the issue was waived on appeal. Trial courts are not required to *sua sponte* address perceived res judicata issues and we find no fundamental error in these proceedings.  We also summarily affirm the portion of the Court of

Appeals opinion in this case that found sufficient evidence to support a CHINS adjudication for each child.  Ind. Appellate Rule 58(A)(2).

Accordingly, we affirm the trial court's judgment that each child in this case was a child in need of services.

Rush, C.J., and Goff, J., concur.
Slaughter, J., concurs in part and in the judgment with separate opinion in which Massa, J., joins.

ATTORNEY FOR APPELLANT
Kyle K. Dugger
Monroe County Public Defender's Office
Bloomington, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

**Slaughter, J., concurring in part and in the judgment.**

I agree with much of the Court's opinion, including its judgment that Mother gets no relief. I write separately to clarify what I believe our governing rules of trial procedure require of litigants in child-in-need-of-services cases.

I'll start with my three areas of agreement with the Court. First, principles of res judicata apply in CHINS proceedings. Second, Mother waived any objection on grounds of res judicata by failing to raise the issue in the trial court. Third, the trial court did not commit fundamental error by failing to raise the issue on its own. Thus, I share the Court's view that the trial court's CHINS adjudication against Mother must be affirmed. Despite these substantial areas of overlap, I am unable to join the Court's opinion in full because of what strike me as its misstatements of governing law, some of which cannot be reconciled with our trial rules.

To begin with, the Court treats the doctrine of res judicata as having two branches—one claim preclusion; the other issue preclusion. In my view, these two forms of preclusion are not separate branches but separate trees. The form of preclusion at issue here—res judicata—ought to refer solely to claim preclusion. Claim preclusion requires, among other things, that the court in the first action have decided the merits of a claim and, in a second action, the losing party in the first action have sought to relitigate what was—or might have been—decided in the first. *Indiana State Ethics Comm'n v. Sanchez*, 18 N.E.3d 988, 993 (Ind. 2014). This contrasts with another form of preclusion—issue preclusion, also known as collateral estoppel—which "bars subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former lawsuit". *Nat'l Wine & Spirits, Inc. v. Ernst & Young, LLP*, 976 N.E.2d 699, 704 (Ind. 2012). Issue preclusion applies even if a subsequent lawsuit concerns a different claim. *Id.*

Next, although res judicata (claim preclusion) generally applies in CHINS and other civil actions, it does not apply here because the trial court's initial judgment—a dismissal without prejudice—was not a decision on the merits. *Wood v. Zeigler Bldg. Materials, Inc.*, 436 N.E.2d 1168, 1170 (Ind. Ct. App. 1982) ("A dismissal without prejudice is not a

determination of the merits of a complaint and does not bar a later trial of the issues."); accord *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06 (2001). As Mother requested, the trial court should have dismissed the first CHINS case **with** prejudice. The Department went to trial and presented evidence in support of its claim that Mother's children needed services. Given the trial court's determination that the Department failed to sustain its burden of proof, the court should have entered a merits judgment against the Department and in favor of Mother. The court's failure to do so was reversible error. But Mother elected not to appeal, although the without-prejudice dismissal was a final judgment. *Wall v. Hutton*, 92 Ind. App. 705, 706, 173 N.E. 600, 601 (1930).

Finally, when (unlike here) a trial court has entered a merits judgment, to preserve a res judicata objection, the prevailing party must object in the second case by asserting the objection as an affirmative defense. Our trial rules expressly identify "res judicata" as an affirmative defense that "shall" be asserted in a "responsive pleading", Ind. Trial Rule 8(C), on pain of having the defense waived. *Willis v. Westerfield*, 839 N.E.2d 1179, 1185 (Ind. 2006) (citing T.R. 8(C)). I do not quarrel with the Court that an objecting party may also need to move separately to preserve this objection. But given Trial Rule 8(C), any such motion is a necessary but insufficient condition for preserving it. Yet the Court dispenses with the responsive-pleading requirement by observing that the legislature purports to excuse parents (and others) against whom CHINS claims have been filed from having to file a responsive pleading. See Ind. Code § 31-34-10-6.

The problem with the Court's conclusion, even ignoring the longstanding rule that on matters of procedure the legislature's edicts must yield to our own rules, *Garner v. Kempf*, 93 N.E.3d 1091, 1099 (Ind. 2018), is that the scope of this statute is not as far-reaching as the Court suggests. By its terms, Section 31-34-10-6 merely says that a parent's failure to respond to a CHINS petition means its **allegations** are denied. The statute does not say that a CHINS respondent's silence at the pleading stage preserves his affirmative defenses.

Trial Rule 1 could not be clearer that "all suits of a civil nature"—which includes CHINS cases—are governed by our trial rules: "Except as otherwise provided, these rules govern the procedure and practice in all courts of the state of Indiana **in all suits of a civil nature** whether cognizable as cases at law, in equity, or of statutory origin." T.R. 1 (emphasis added).

Perhaps the Court is correct in implying that Rule 8(C)'s requirements of a responsive pleading do not reflect the reality of CHINS practice on the ground in our trial courts. But as long as the trial rules apply to all civil suits, we should enforce the rules as written and not sanction the short-cut practices that today's decision ratifies.

Massa, J., joins.