



FILED

Apr 06 2026, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N T H E

# Court of Appeals of Indiana

In the Matter of V.K. and T.K. (Minor Children), Children in Need of Services,

and

## A.R. (Mother)

*Appellant-Respondent*

v.

## Indiana Department of Child Services,

*Appellee-Petitioner*

April 6, 2026

Court of Appeals Case No.
25A-JC-2395

Appeal from the Perry Circuit Court

The Honorable Lucy Goffinet, Judge

Trial Court Cause Nos.
62C01-2503-JC-52
62C01-2503-JC-53

**Kenworthy, Judge.**

## Case Summary

[1] After the trial court adjudicated her two children V.K. and T.K. (collectively, "Children") Children in Need of Services ("CHINS"), A.R. ("Mother") appeals the trial court's dispositional order requiring her to submit to random drug screens and abstain from using alcohol. The Department of Child Services ("DCS") contends Mother waived this challenge for failure to object to DCS's predispositional report recommendations at the dispositional hearing.

[2] Because Mother waived her argument, we affirm.

## Facts and Procedural History

[3] Mother and T.K., Jr. ("Father") (collectively, "Parents") are the parents of V.K. (born in March 2020) and T.K. (born in February 2022). Father is not a party to this appeal.

[4] Parents have a history of domestic violence and DCS involvement. Since 2019, Mother has been named a perpetrator of abuse or neglect in seventeen DCS investigations, three of which resulted in substantiations and open cases, not

including the current case.[1] V.K. was first adjudicated a CHINS as an infant in September 2020 after Parents admitted domestic violence occurred between them in the home. V.K. was removed from Parents' care but reunified with them in July 2021. V.K. was removed and adjudicated a CHINS for the second time in November 2021, again because of domestic violence between Parents. During that case, Parents admitted to illegal substance use in the home. While the second CHINS case was pending, T.K. was born. Although T.K. was temporarily removed from Parents' care due to allegations of domestic violence in the home, the trial court found he was not a CHINS and he returned home in August 2022. V.K.'s second CHINS case closed in August 2023 when V.K.'s foster parent was appointed his guardian. But the guardianship over V.K. terminated in July 2024, and V.K. returned to Parents' care. Over the four years these CHINS matters were pending, Parents filed several protective orders against each other.

[5] In the fall of 2024, DCS investigated reports that Mother and Children were homeless and sleeping in her car in Perry County. Mother denied the allegations and produced a lease for a home in Tennessee. In January 2025, DCS learned from Tennessee authorities Mother was not living at the address she provided and the residents there had never heard of her. On January 30,

---

[1] Since 2013, Father has been named a perpetrator of abuse or neglect in thirty-two investigations, six of which resulted in substantiations and four open cases. The investigations primarily related to reports of housing instability, domestic violence, drug use, and physical abuse. Father's DCS history predates Mother's, but most of the investigations related to Mother also involve Father.

using a Cannelton, Indiana address, Mother petitioned for a protection order against Father. She alleged he committed acts of domestic violence against her between October 2024 and January 2025, including body slamming, choking, punching, and elbowing her. As part of its investigation, DCS pulled police dispatch reports which documented "multiple calls about things becoming physical between" Parents. *Tr. Vol. 2* at 79.

[6] On February 2, DCS received a report that Children were living with Mother and her boyfriend in Troy, Indiana; there was illegal drug use in the home; and Mother was physically abusing V.K. Mother brought Children to the local DCS office to meet with an assessment case manager. Mother claimed to be staying with a friend (not the alleged boyfriend) and permitted the case manager to see that home. Father was living elsewhere. Mother signed a safety plan but declined offered services. Two weeks later, DCS received a report that V.K. was hospitalized because of Mother "allegedly beating [him] up." *Id.* at 75. After that, Mother would not allow DCS to visit Children in her home.

[7] At the end of February, Mother took now five-year-old V.K. to Wellstone psychiatric hospital, where he was admitted for "behavioral issues," including "verbal and physical aggression." *Id.* at 17, 108. Physicians prescribed him medication to manage his symptoms and discharged him after about a week. He was again admitted to Wellstone in March. Mother declined to sign a release to permit DCS to access V.K.'s medical records or speak to providers about his treatment. After his discharge, Mother took V.K. to see a nurse

practitioner for medication management.  The nurse practitioner referred V.K. to therapy.

[8]     DCS filed petitions alleging Children were CHINS.  Along with the petitions, Parents were each served with a summons and notice of rights.  The documents advised Parents they would be informed at the initial hearing (1) of the dispositional alternatives available to the trial court should Children be adjudicated CHINS, (2) they may be required to participate in a program of care, treatment, or rehabilitation for Children, and (3) they may controvert any allegations made at a dispositional hearing concerning their participation.  *See Appellant's App. Vol. 2* at 33, 160.  Parents appeared at the initial hearing, and the trial court advised them of their rights.  *See id.* at 54.  Following an April status hearing, the trial court ordered Mother to sign releases to permit DCS access to Children's medical records, over Mother's objection.

[9]     The CHINS factfinding hearing began on May 22, 2025.  At the time, Mother was pregnant and due to give birth in September.  Despite the protective orders and previous DCS involvement, Mother denied she and Father have a history of domestic violence or Children witnessed it.  She recanted the allegations she made against Father in the January 30 protection order petition.[2]  Mother denied ever being unhoused, explaining she and Children were camping in the fall.  She claimed V.K.'s behavioral struggles stemmed from prior DCS

---

[2] In a separate proceeding, the trial court dismissed the petition on Mother's motion.

involvement. When asked about illegal drug use, Mother denied self-medicating with marijuana, explaining in the past she was "buying THCA from a gas station" which is "legally allowed to be bought in Indiana" but she no longer uses it. *Tr. Vol. 2* at 32. DCS introduced into evidence Wellstone records in which Mother reported to V.K.'s treating physician "she smoked marijuana and nicotine at the time of [V.K.'s] admission [in February 2025] as her appetite was very low and it helped her with her issues." *Exhibit Vol. 2* at 134.[3] DCS also introduced records of the prior CHINS cases containing allegations Mother used marijuana and kratom; allegations Father used methamphetamine, marijuana, and medications without a prescription; and Parents' 2021 admission to illegal substance use in the home.[4] Due to time constraints, the court continued the hearing until June.

[10] A week later, on May 29, a bystander called police to Mother's residence after he saw Mother drive erratically, park in front of her house, get out of the car, reach through the open back car window, and start "swinging" and "hitting" into the backseat. *Tr. Vol. 2* at 99. The witness then watched as Mother "yanked" V.K. out of the car, "smacked" him, "picked [him] up in a choke hold," "struck him in the face," then took him inside. *Id.* at 99, 101. The

---

[3] A single exhibit volume appears in the record of this case; however, it begins with a continuation of Petitioner's Exhibit 5 (V.K.'s medical records). Apparent from the contents, the trial court clerk's submission is the second volume of what should be a two-volume exhibit bundle, and we refer to it as Exhibit Volume 2.

[4] These records appear in Exhibit Volume 1. We have obtained the missing exhibit volume through the Odyssey Case Management System.

bystander heard V.K. screaming. When police arrived, V.K. had "redness" and "minor discoloration" or bruising on his face and appeared to have been crying. *Id.* at 91–92. During the incident, three-year-old T.K. was in the car, crying and "in emotional distress." *Id.* at 94. DCS removed V.K. from Mother's care and placed him with Father. T.K. remained with Mother.

[11] The factfinding resumed on August 5. V.K.'s clinical therapist testified he had a "working diagnosis" of "adjustment disorder with a mixed disturbance of emotions and conduct[.]" *Id.* at 107–08. The therapist had been unable to make a more specific diagnosis because V.K. attended only one session in June and one in July, falling short of the recommended weekly schedule. The Family Case Manager ("FCM") explained she had offered Parents parenting assessments and family preservation services to help them learn strategies to manage V.K.'s behavior, but neither agreed to participate. The FCM was concerned Parents would not provide therapy for V.K. absent a court order. The trial court adjudicated Children CHINS on August 13, finding, in pertinent part:

> 5. [V.K.] has adjustment disorder, as diagnosed by his therapist[.]
>
> * * *
>
> 7. [Mother] physically abused [V.K.] in the presence of [T.K.].
>
> * * *

9. The parents have filed at least 6 protective orders against each other in the last 5 years.

10. Physical abuse and domestic violence [are] occurring in the home.

11. The children have witnessed domestic violence in the home.

12. While the children are receiving medical treatment, the parents are unwilling to seek adequate therapeutic services.

*Appellant's App. Vol. 2* at 100–01. On August 13, DCS filed a predispositional report recommending, among other things, the trial court order Mother to submit to random drug screens and abstain from illegal controlled substance and alcohol use. *See id.* at 94.

[12] The trial court held a dispositional hearing on August 26, at which Mother and her counsel appeared. During the hearing, the DCS attorney requested the trial court "accept the findings and recommendations contained in this [predispositional] report, . . . adopt it as a dispositional decree[,] and order the parents to participate accordingly." *Tr. Vol. 2* at 166–67. When asked for argument, Mother's counsel stated, "We don't have any changes or modifications to the report, Your Honor." *Id.*[5] The trial court adopted the predispositional report and accepted DCS's findings and recommendations. In

---

[5] Father's counsel objected to the recommendation he engage in a psychological evaluation on the grounds "we don't believe it was reasonably based on the evidence before this Court." *Id.* The trial court ordered him to undergo the evaluation over his objection.

its dispositional order, the trial court ordered Mother to submit to random drug screens and to refrain from using illegal drugs or alcohol, among other requirements.

## Mother waived her challenge to the trial court's dispositional orders concerning parental participation.

[13] Mother does not appeal the determination Children are CHINS, but rather the requirements in the trial court's dispositional order she abstain from alcohol use and submit to random drug screens. She argues the evidence presented and the trial court's findings do not support such requirements.

[14] Before addressing the merits of Mother's argument, DCS contends Mother's issue is waived for failure to object to DCS's predispositional report recommendations at the dispositional hearing. Put differently, DCS believes Mother cannot dispute for the first time on appeal the trial court's dispositional orders where the court adopted the findings and recommendations DCS proposed in its predispositional report.

[15] After a child is adjudicated a CHINS, the trial court must order DCS to prepare a predispositional report containing a "statement of the needs of the child for care, treatment, rehabilitation, or placement" and a "recommendation for the care, treatment, rehabilitation, or placement of the child." Ind. Code § 31-34-18-1(a) (2008). The person preparing the report shall also consider "the necessity, nature, and extent of the participation by a parent" in the child's

program of care. I.C. § 31-34-18-2(a) (2019).[6] Parents may prepare and submit their own reports and recommendations for the trial court's consideration. *See* I.C. § 31-34-18-1(b).

[16] Not more than thirty days after the CHINS adjudication, the trial court shall hold a dispositional hearing to consider, among other things, the alternatives for the child's care and the degree of the parent's participation. I.C. § 31-34-19-1(a)(1)–(2) (2015). DCS must provide the child's parent with notice of the hearing, I.C. § 31-34-19-1.3(a) (2007), and the predispositional report must be made available to the parent's attorney at least forty-eight hours in advance, I.C. § 31-34-18-6 (2018).

[17] At the hearing, a parent has a due process right to be heard and make recommendations to the trial court. I.C. § 31-34-19-1.3(b) ("The court shall: (1) provide a person required to be notified . . . an opportunity to be heard; and (2) allow a person described in subdivision (1) to make recommendations to the court; at the dispositional hearing."). If a parent makes recommendations, the trial court must consider them before entering its dispositional decree. I.C. § 31-34-19-6.1(a)(2) (2018). A predispositional report may be admitted into evidence at the hearing to the extent it contains "evidence of probative value even if the report would otherwise be excluded." I.C. 31-34-19-2(a) (2007); *see*

---

[6] We refer throughout this opinion to a "parent" because of the facts of this case, but generally these rights also apply to guardians and custodians. At times, the CHINS statutes extend certain rights and responsibilities to other participants, such as the child, guardians *ad litem*, court appointed special advocates, foster parents, the trial court, and counsel.

*also In re K.D.*, 962 N.E.2d 1249, 1259 (Ind. 2012) ("At a dispositional hearing, the juvenile court can admit the dispositional report of DCS even if it includes hearsay."). But the child's parent "shall be given a fair opportunity to controvert any part of the report admitted into evidence." I.C. 31-34-19-2(c).

[18] After the hearing, the trial court enters its dispositional decree. I.C. § 31-34-19-6.1. As part of the decree, a trial court may order the child's parent to complete reunification services recommended by DCS and approved by the court. I.C. § 31-34-20-1(a)(6) (2025); I.C. § 31-34-20-3(a) (2022).[7]

[19] In this case, the record shows the written summons and notice of rights advised Mother that she may be required to participate in a program of care, treatment, or rehabilitation for Children, and she may controvert any allegations made at a dispositional hearing concerning her participation. Then, at the initial hearing, the trial court advised Mother of these rights in person. After Children were adjudicated CHINS, DCS provided Mother with notice of the dispositional hearing. DCS filed its predispositional report thirteen days before the hearing

---

[7] It is common for a trial court to adopt DCS's findings and recommendations in the dispositional decree; in fact, there is a statutory presumption in favor of DCS's recommendations. *See In re T.S.*, 906 N.E.2d 801, 804 (Ind. 2009). If during the dispositional hearing the trial court disagrees with DCS's recommendations as submitted or wants DCS to consider other parties' or the court's recommendations, it must continue the hearing to permit DCS to review the other recommendations and file a supplemental report. I.C. § 31-34-19-6.1(c). The trial court "*shall* accept" DCS's final recommendations, unless the court finds a recommendation is "unreasonable, based on the facts and circumstances of the case" or "contrary to the welfare and best interests of the child." I.C. § 31-34-19-6.1(d) (emphasis added). In its written findings, the trial court must then "specifically state" why the court is not accepting DCS's final recommendations. I.C. § 31-34-19-6.1(e). Based on this statutory scheme, our Supreme Court has acknowledged there is a "statutory presumption favoring DCS's final recommendations," and trial courts "lack unfettered discretion to make a contrary decision" to DCS's recommendations. *T.S.*, 906 N.E.2d at 804.

date, and the report included DCS's recommendations Mother participate in random drug screens and abstain from illegal controlled substance and alcohol use. Mother appeared in person and with counsel at the dispositional hearing. And as she acknowledges on appeal, the trial court gave her an opportunity to object to DCS's predispositional report recommendations, and her counsel stated she had no changes to propose. The trial court then adopted DCS's recommendations in its dispositional decree. Because Mother had notice, an opportunity to be heard, and declined to object to DCS's proposal, we hold that under these circumstances, Mother waived any challenge to the trial court's dispositional orders adopting DCS's recommended parental participation services and conditions.

[20] Still, Mother contends she did not waive this issue because "appealing dispositional requirements [is] similar to appealing probation conditions as part of a criminal sentence, which need not be objected to in the lower court to raise the first time on appeal." *Appellant's Br.* at 9. Mother's argument relies on a recent opinion of this Court, *In re B.W.*, 266 N.E.3d 744 (Ind. Ct. App. 2025), *trans. denied*.

[21] In *B.W.*, DCS also claimed a mother had waived her challenge to requirements imposed in a dispositional order for failing to object to DCS's predispositional report recommendations in the trial court. *Id.* at 751. On appeal, the *B.W.* Court declined to apply waiver, first noting the mother had tendered her own proposed dispositional order before the hearing. *Id.* The panel also noted the trial court adopted DCS's recommendations as proposed without discussion

and afforded the mother no opportunity to object at the hearing. *Id.* Finally, the *B.W.* Court "liken[ed] the appeal of the dispositional requirements to an appeal of probation conditions or a criminal sentence, which we may review without insisting that the claim first be presented to the trial judge." *Id.* (internal quotation marks and citations omitted). For these reasons, this Court reviewed the mother's challenges to the dispositional requirements on the merits.

[22] We disagree with Mother's argument, supported by *B.W.*, analogizing parental participation orders to probation conditions. These two types of orders serve fundamentally different purposes and interests.

[23] Probation is a criminal sanction. *Bratcher v. State*, 999 N.E.2d 864, 873 (Ind. 2013). Criminal defendants who receive probation agree to accept conditions upon their behavior in lieu of imprisonment. *Id.* The conditions imposed must be reasonably related to the defendant's treatment and the protection of public safety. *Id.*

[24] On the other hand, CHINS proceedings are civil actions. *In re Eq.W.*, 124 N.E.3d 1201, 1209 (Ind. 2019). The Indiana Rules of Trial Procedure and additional procedural safeguards created by the legislature and courts govern CHINS proceedings. *Id.* at 1209–10. The "resolution of a juvenile proceeding focuses on the best interests of the child, rather than guilt or innocence as in a criminal proceeding." *In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010). A CHINS adjudication is simply a determination that a child is in need of services, and it

focuses on the condition of the child without establishing parental culpability. *Id.* at 105. As often said, the purpose of a CHINS adjudication "is to protect children, not punish parents." *Id.* at 106. After a CHINS adjudication, a parent may be required to participate in the child's program of care, treatment, or rehabilitation, but the program focuses on addressing the child's needs. *See* I.C. § 31-34-20-1(a)(6) (providing that the trial court "shall consider the child's health, welfare, and safety as the paramount concern" when ordering a parent to participate in appropriate reunification services). Because probation conditions and CHINS dispositional orders address fundamentally distinct goals, we decline to adopt *B.W.*'s reasoning.

[25] *B.W.* is also distinguishable for two reasons. First, unlike Mother here, the mother in *B.W.* put forth her own proposal for the child's care, as permitted by statute. *See* I.C. § 31-34-18-1(b) (providing a child's parent may prepare an alternative report for the trial court's consideration); I.C. § 31-34-19-6.1 (providing a trial court must consider a parent's recommendations). The *B.W.* mother's alternative report was functionally an objection, or at least sufficiently signaled disagreement with DCS's recommendations to preserve the issue for appeal. Second, the trial court in *B.W.* apparently adopted DCS's recommendations in court without giving the mother an opportunity to object, contrary to the statute's due process protections. *See* I.C. § 31-34-19-1.3(b) (a parent whose child has been adjudicated a CHINS is entitled to be heard at the dispositional hearing); I.C. 31-34-19-2(c) (a child's parent "shall be given a fair opportunity to controvert any part of the [predispositional] report admitted into

evidence"). If the court did not permit the mother in *B.W.* to be heard, she cannot have waived her objection.

[26]    In summary, the mother in *B.W.* either objected by submitting her own report, or the trial court denied her an opportunity to object at the hearing. In either case, the issue was not waived. Unlike the parent in *B.W.*, Mother submitted no recommendations of her own before the dispositional hearing and, after given the opportunity to object, stated in open court she had no concerns with DCS's proposal. As compared to those in *B.W.*, the circumstances here present a much stronger case for waiver.

[27]    Indeed, we generally prefer to address cases on the merits rather than decide them on procedural grounds such as waiver. *See Eq.W.*, 124 N.E.3d at 1214. But our Supreme Court has previously held a parent can waive an issue in a CHINS proceeding by failing to bring it to the trial court's attention. See *id.* at 1212–13 (holding a parent appealing a CHINS adjudication waived the issue of *res judicata* by failing to raise it in the trial court); *cf. In re N.G.*, 51 N.E.3d 1167, 1173 (Ind. 2016) (in the context of termination of parental rights, holding a parent may waive a constitutional claim, including a claimed violation of due process rights, by raising it for the first time on appeal). And we note that in at least two published cases in which Indiana appellate courts have reversed a trial court's dispositional orders concerning parental participation, the disputed recommendations were known or objected to in the court below. *See, e.g., K.D.*, 962 N.E.2d at 1258 (noting the stepfather "constantly denied" throughout the proceedings he needed sex offender treatment); *In re A.C.*, 905 N.E.2d 456, 464

(Ind. Ct. App. 2009) (in a case where a mother disputed the trial court's dispositional order she participate in and complete a drug and alcohol assessment, noting the trial court's findings of fact stated the mother disagreed she needed any substance evaluation services).

[28] Moreover, this Court has often observed a "parent may not sit idly by without asserting a need or desire for services and then successfully argue that he was denied services to assist him with his parenting." *In re J.W.*, 259 N.E.3d 1039, 1048 (Ind. Ct. App. 2025) (internal quotation omitted), *trans. denied.* Similarly, when a statute provides a parent with the right to notice of DCS's recommendations and an opportunity to controvert them, a parent should not be permitted to sit silently then later argue she should not have been required to engage in services in the first place. *See Eq.W.*, 124 N.E.3d at 1213 (noting where the statute provided parents the right to challenge the elements DCS must prove to establish a child is a CHINS, the mother "had at least some cognizable responsibility" to challenge the CHINS petition before the trial court).

[29] To avoid waiver generally, a party must raise an issue in the trial court before seeking an opinion on appeal. *Endres v. Ind. State Police*, 809 N.E.2d 320, 322 (Ind. 2004). The policy reasons behind this requirement include "preservation of judicial resources, opportunity for full development of the record, utilization of trial court fact-finding expertise, and assurance of a claim being tested by the adversary process[.]" *Id.* In the context of children adjudicated CHINS, our legislature has also prioritized timely provision of services and permanency.

*See, e.g.*, I.C. § 31-34-19-1(a) (requiring a dispositional hearing to be completed within thirty days of the CHINS finding). A parent who objects to DCS's recommendations gives the trial court an opportunity to correct any errors—*before* a parent is ordered to comply with the recommended conditions and services. And a timely objection gives the parties opportunity to develop the record for appeal as to why the evidence does—or does not—warrant imposition of the disputed recommendation or service. Requiring a parent to object in the trial court to DCS's predispositional report recommendations to preserve the issue for appeal therefore best advances these important policy considerations.

[30] Mother had a responsibility to challenge before the trial court any of DCS's recommendations she believed were unsupported by the evidence, inappropriate, or otherwise unnecessary. Mother did not do so, and accordingly her challenge to the dispositional requirements is waived.

## Waiver notwithstanding, the trial court did not err in imposing substance use requirements on Mother.

[31] Waiver notwithstanding, we turn to the substance of Mother's argument: that the trial court erred in ordering her to submit to random drug screens and refrain from alcohol use. Mother contends the two challenged requirements lack evidentiary support.

[32] After a child is adjudicated a CHINS, a trial court may order the child's parent to complete reunification services recommended by DCS and approved by the

court.  I.C. § 31-34-20-1(a)(6).  Such services may include ordering the parent to do the following:

> (1) Obtain assistance in fulfilling the obligations as a parent[.]
>
> (2) Provide specified care, treatment, or supervision for the child.
>
> (3) Work with a person providing care, treatment, or rehabilitation for the child.
>
> (4) Participate in a program operated by or through the department of correction.
>
> (5) Participate in a mental health or addiction treatment program.

I.C. § 31-34-20-3(a).  When considering which reunification services are appropriate, the trial court shall consider:

> (A) any failure of the parent . . . to substantially participate in previously ordered services or substantially comply with a previous case plan;
>
> (B) any history of the parent . . . abusing the child while the parent . . . was under the influence of drugs or alcohol;
>
> (C) any history of the parent . . . directing violent behavior at the child or at a member of the child's immediate family;
>
> (D) whether the parent . . . continues to reside with an individual who abused the child;

(E) any patterns of behavior by the parent . . . that have exposed the child to repeated abuse;

(F) any testimony by a competent professional that remediation of the parent's . . . behavior is unlikely to be successful; and

(G) whether the parent . . . has expressed an interest in reunification with the child.

I.C. § 31-34-20-1(a)(6). "In determining the appropriateness of the reunification services, the court shall consider the child's health, welfare, and safety as the paramount concern." *Id.*

[33] Our Supreme Court has previously held a trial court has "broad discretion in determining [the] programs and services in which a parent is required to participate," but the requirements "must relate to some behavior or circumstances" revealed by the evidence. *K.D.*, 962 N.E.2d at 1258 (citing *A.C.*, 905 N.E.2d at 464). A trial court should not force "unnecessary requirements" upon parents whose children have been adjudicated CHINS, *id.*, and should avoid adopting "mere boilerplate language" to impose requirements lacking evidentiary support. *See, e.g, A.C.*, 905 N.E.2d at 464. At the same time, predispositional report recommendations which require parents to provide for children's basic needs—such as food, clothing, shelter, medical care, education, or supervision—are routine but appropriate to include in dispositional orders as part of the child's program of care, treatment, or rehabilitation when a child is adjudicated a CHINS under the general neglect statute. *See* I.C. § 31-34-1-1 (2019). Components of the dispositional order

which "seek to ensure stability in the home to which the Children may be returned" are "both appropriate and necessary." *B.W.*, 266 N.E.3d at 754 (Mathias, J., dissenting).

[34] Here, DCS introduced prior CHINS case records showing this family has a history of DCS involvement stemming primarily from domestic violence between Mother and Father. In a prior CHINS case, Parents admitted there was illegal substance use in the home, including marijuana, kratom, methamphetamine, and prescription drugs. In the current case, DCS investigated several reports related to Mother and Children, including "allegations of substance use with [Mother] and her alleged boyfriend at the time." *Tr. Vol. 2* at 72. DCS introduced medical records showing Mother told V.K.'s health care provider she was using marijuana when V.K. was admitted to Wellstone in February 2025 to cope with "her issues" and poor appetite. *Exhibit Vol. 2* at 134. During her testimony, Mother explained she has used a marijuana-adjacent substance, THCA.

[35] Although Mother denied any current illegal substance use, the trial court was not required to credit her testimony. *See K.D.*, 962 N.E.2d at 1253 (noting that when we review CHINS matters, we "neither reweigh the evidence nor judge the credibility of the witnesses"). And in this case, Mother's testimony at the factfinding hearing was not especially credible. For example, she denied she and Father engaged in domestic violence, despite substantial evidence to the contrary, including the prior CHINS cases, multiple protective orders between Parents, recent police dispatch reports, and the allegations in Mother's most

recent protective order petition. And Mother denied physically abusing V.K. on May 29, despite credible eyewitness testimony describing the abuse. The trial court reasonably could have concluded Mother was not being forthcoming about her current substance use.

[36] This is not a case in which a CHINS adjudication was based on evidence of sporadic drug or alcohol use without evidence of child endangerment. *See, e.g.*, *In re D.S.*, 150 N.E.3d 292, 296 (Ind. Ct. App. 2020) (collecting CHINS cases concerning drug use). Here, the trial court adjudicated Children CHINS because of domestic violence, physical abuse, and Parents' unwillingness to ensure adequate therapeutic services for V.K. without court intervention—none of which Mother challenges on appeal. The trial court was aware of the history and allegations of substance use in Mother's home. DCS introduced evidence of those circumstances as well as Mother's admission to a healthcare provider that she was using marijuana as recently as February 2025.

[37] The CHINS statutes clearly state a trial court may consider a parent's history and patterns of behavior when ordering reunification services. I.C. § 31-34-20-1(a)(6); *see also Eq.W.*, 124 N.E.3d at 1211 (observing "past acts by parents can be relevant to new CHINS filings involving the same parents and children"). When a parent abuses drugs, she endangers her children in a variety of ways. *In re D.L.*, 814 N.E.2d 1022, 1029 (Ind. Ct. App. 2004), *trans. denied*. Children in this case are of tender age, and V.K. has significant mental health needs and behavioral challenges. There is a long history of domestic violence and instability resulting in Children's endangerment, all against a backdrop of illicit

drug use. The State has an interest in ensuring Children remain in, or return to, a stable home environment with sober caregivers. There was sufficient evidence of Mother's historical and current substance use in the record to support the trial court's orders imposing requirements on Mother related to it.

[38] The trial court did not err, or abuse its discretion, in ordering Mother to submit to random drug screens and refrain from alcohol and illegal substance use.

## Conclusion

[39] Mother waived her challenge to the dispositional requirements. Waiver notwithstanding, sufficient evidence supports the trial court's dispositional orders.

[40] Affirmed.

Bradford, J., and Pyle, J., concur.

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana