## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 12 2020, 9:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Heather M. Schuh-Ogle
Thomasson, Thomasson, Long &
Guthrie, P.C.
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In that Matter of B.Y., T.H., L.A., and A.A., Minor Children in Need of Services;<br><br>T.Y. (Mother),<br><br>*Appellant-Respondent,*<br><br>v.<br><br>Indiana Department of Child Services,<br><br>*Appellee-Petitioner.* | March 12, 2020<br><br>Court of Appeals Case No. 19A-JC-2437<br><br>Appeal from the Bartholomew Circuit Court<br><br>The Honorable Kelly S. Benjamin, Judge<br><br>The Honorable Heather M. Mollo, Magistrate<br><br>Trial Court Cause Nos.<br>03C01-1905-JC-2877<br>03C01-1905-JC-2878<br>03C01-1905-JC-2879<br>03C01-1905-JC-2880 |

**Najam, Judge.**

# Statement of the Case

T.Y. ("Mother") appeals the trial court's order adjudicating her four minor children, B.Y., T.H., L.A., and A.A. ("the Children") to be Children in Need of Services ("CHINS").[1] Mother raises three issues for our review, which we restate as the following two issues:

1. Whether the Indiana Department of Child Services ("DCS") presented sufficient evidence to show that the Children were CHINS.

2. Whether the trial court's dispositional order imposed reasonable efforts to preserve and reunify the family.

We affirm.

# Facts and Procedural History

On May 17, 2019, seven-year-old L.A. and six-year-old A.A. came home from school on their school bus but were locked out of their home. It was about 2:20 in the afternoon, and the heat index that day was near 100 degrees. Neither child had water. They waited for two hours before police arrived following a neighbor's phone call. And, once the police were there, L.A. and A.A. waited an additional two hours before being escorted to a police station.

---

[1] The fathers of the Children do not participate in this appeal.

[4] This was not the first time the Children had been locked out of their home on a school day. On prior occasions, if T.H., one of the older children, were with the younger children he would help L.A. climb the fence into the backyard, and L.A. would then enter the house through an unlocked back door and open the front door for the other children.

[5] On May 17, as on the prior occasions, Mother was asleep inside the house. One of the responding officers, Columbus Police Department Officer Aaron Graham, observed her vehicle in the driveway and called every contact number he had for Mother, to no avail. He knocked on the front door "to the point of almost knocking the door off the hinges" without a response. Tr. Vol. 2 at 66. And when L.A. and A.A. directed him to a particular window near where Mother usually slept, Officer Graham knocked on the window "to the point of almost breaking the glass." *Id.* Officer Graham's attempts to awaken Mother were unsuccessful.

[6] B.Y. was dismissed from school around 3:00 that afternoon and walked home after his parents had failed to pick him up. He arrived at the house around 4:00 that afternoon. Officer Graham then took B.Y., L.A., and A.A. back to the police station and contacted DCS, who took custody of the Children.[2] Once Columbus Police Department officers were able to contact Mother, they arrested her for neglect of a dependent.

---

[2] It is not clear when DCS took custody of T.H.

[7] DCS filed its petitions alleging the Children to be CHINS. In its petitions, DCS alleged that Mother had endangered the Children due to her inability, refusal, or neglect to provide them with proper supervision on May 17 and the prior occasions in which the Children had been locked out of the house after school. DCS further alleged that law enforcement had reported concerns of drug use inside Mother's home. And DCS stated that it had been unable to verify the adequacy of the conditions inside the home.

[8] At an ensuing fact-finding hearing on DCS's petitions, Mother acknowledged that the family home is not in "the best neighborhood," and she does not "like to keep the key outside." *Id.* at 12. She further acknowledged that she was asleep inside the house on May 17 when L.A. and A.A. attempted to come home from school and that that was not the first time she had slept through the Children attempting to come home but being locked out. She added that she has trouble sleeping due to a pain from a shoulder injury she sustained several years ago but, when she did sleep, she slept heavily.

[9] Following the fact-finding hearing, the court adjudicated the Children to be CHINS based on the "continuation of a pattern of . . . [Mother] being asleep when the [C]hildren arrive home from school." *E.g.*, Appellant's App. Vol. 2 at 53. The court further found as follows:

> On multiple occasions, the [C]hildren have been unable to wake [Mother] or can do so only after shaking and yelling at [her]. Similarly, when getting ready for school in the mornings, [Mother] sometimes cannot be awakened. While the . . . older brother [B.Y.] helps ensure [the other Children] get on the bus on

time, [B.Y.] himself has missed school because he could not wake [his father, who lived with Mother,] up to drive [B.Y.] to school. There is a pattern of the [C]hildren and others not being able to wake or rouse the parents to care for the [C]hildren. . . .

*Id.* at 53-54. The court concluded:

There was evidence of suspected drug use by [Mother] based on [her] inability to be awakened. In addition, [the maternal grandmother] testified that [Mother] has asked her for pain pills in the past. . . . [Mother] . . . ha[s] refused DCS's requests for drug screens. [Mother] was arrested after the first day of hearings for alleged theft of medications . . . . However, all of those medications were accounted for and there was no direct evidence of current drug use. . . .

Additional evidence was presented that the home was dirty and unsatisfactory for the [C]hildren to live there. However, the majority of that testimony related to a time at least seven or eight months ago, with the more recent testimony from the [C]hildren ranging from [the home] being cluttered but with no stale food to messy with stale food. Although DCS made some efforts to view the home, they were not successful and no motion to compel was sought.

The court finds that[,] although valid concerns about the condition of the home and potential drug use were raised, the evidence of these concerns was insufficient, at least standing alone, to support a finding that the [C]hildren are [CHINS]. However, the court also finds that [DCS] did meet its burden of proving that the [C]hildren are [CHINS] based on . . . [Mother's] unwillingness or inability to provide adequate supervision for the [Children].

*Id.* at 54.

Thereafter, the court entered its dispositional order. In that order, the court directed Mother, among other things, to complete a substance abuse evaluation and any recommended treatment following that evaluation; submit to random drug screens; participate in home-based case management to address keeping an appropriate home; and participate in individual counseling. This appeal ensued.

# Discussion and Decision

### Issue One: Whether DCS Presented Sufficient
### Evidence to Show the Children are CHINS

We first address Mother's contention that DCS failed to present sufficient evidence to show that the Children are CHINS. As our Supreme Court has made clear:

> In all CHINS proceedings, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012) (quoting *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010)). When reviewing a CHINS adjudication, "we do not reweigh evidence or judge witness credibility" and will reverse a determination only if the decision was clearly erroneous. *In re D.J.*, 68 N.E.3d 574, 577-78 (Ind. 2017). "A decision is clearly erroneous if the record facts do not support the findings or if it applies the wrong legal standard to properly found facts." *Id.* at 578 (internal quotation omitted).

*V.B. v. Ind. Dep't of Child Servs. (In re Eq.W.)*, 124 N.E.3d 1201, 1208 (Ind. 2019).

[12] Here, the trial court concluded that DCS presented sufficient evidence to show that the Children's physical or mental health was seriously impaired or seriously endangered as a result of Mother's inability, refusal, or neglect to supply the Children with necessary supervision. *See* Ind. Code § 31-34-1-1(1) (2019). Mother asserts on appeal that the court's conclusion is erroneous because there is no evidence to support the trial court's findings that the May 17 incident was part of a pattern or that, on multiple occasions, the Children have been unable to wake Mother without yelling at or shaking her. Mother then asserts that the May 17 incident was a one-time occurrence that was remedied once the Children were able to get back into the house.

[13] Mother's arguments are simply incorrect. L.A. and B.Y. each testified to other times they had been locked out of the home while Mother slept inside. Indeed, in her testimony to the trial court Mother herself acknowledged that the May 17 incident was not a one-time occurrence and that prior, similar occurrences had taken place. Further, L.A. testified that "it was . . . hard" to wake her Mother, and to do so the Children "needed to shake [her] a lot and yell a lot." Tr. Vol. 2 at 92. The trial court's findings that the May 17 incident was part of a pattern and that to wake Mother the Children had to yell at or shake her are supported by the record. And, as Mother's argument that DCS failed to present sufficient evidence is premised on her position that the May 17 incident was a one-time occurrence, and that premise is incorrect, we likewise conclude that the trial court did not err when it concluded that the Children were CHINS based on

Mother's repeated inability, refusal, or neglect to provide the Children with appropriate supervision.

### Issue Two: Whether the Dispositional Order is Appropriate

[14] Mother next asserts that the court's dispositional order directs her to participate in services that are not related to behavior or circumstances supported by the evidence. "Although the juvenile court has broad discretion in determining what programs and services in which a parent is required to participate, the requirements must relate to some behavior or circumstances that was revealed by the evidence." *S.S. v. Ind. Dep't of Child Servs. (In re K.D.)*, 962 N.E.2d 1249, 1258 (Ind. 2012).

[15] According to Mother, the court's order for her to complete a substance abuse evaluation and any recommended treatment following that evaluation; submit to random drug screens; participate in home-based case management to address keeping an appropriate home; and participate in individual counseling are not related to behavior revealed by the evidence. In particular, Mother relies on the trial court's statement in its judgment adjudicating the Children to be CHINS that "the evidence of these concerns was insufficient." Appellant's App. Vol. 2 at 54.

[16] Again, we cannot agree with Mother's reading of the record. The court did not say, full stop, that it found DCS's evidence of Mother's drug use and an inadequate home not credible, nor did the court outright reject DCS's allegations in those regards. Rather, the court said only that the evidence of

Mother's alleged drug use and the inadequate home was not, "standing alone," sufficient to support a CHINS adjudication. *Id.* at 54. In other words, the court found that Mother *did* have issues with drug use that should be addressed and that Mother's home *was* inadequate—the court simply concluded that those concerns were not sufficient in themselves to adjudicate the Children to be CHINS.

[17] The court having then adjudicated the Children to be CHINS based on other evidence, we cannot say that the court erred when it directed Mother to participate in services aimed at improving her behavior with respect to drug use and an inadequate home, including the order to participate in counseling. Indeed, part of the court's findings include its assessment that "[t]here was evidence of suspected drug use by [Mother] based on [her] inability to be awakened." *Id.* We think a dispositional order on these facts that *failed* to account for such a possibility would be questionable.

[18] In sum, we affirm the trial court's determination that the Children are CHINS and its dispositional order directing Mother to participate in services.

[19] Affirmed.

Vaidik, J., and Tavitas, J., concur.