

IN THE

# Court of Appeals of Indiana

T.W. (Minor Child),

*Appellant-Respondent*



FILED

Oct 23 2024, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

---

October 23, 2024

Court of Appeals Case No.
24A-JC-780

Appeal from the Delaware Circuit Court

The Honorable Kimberly S. Dowling, Judge
The Honorable Amanda L. Yonally, Magistrate

Trial Court Cause No.
18C02-2112-JC-128

---

**Opinion by Judge Weissmann**
Judges Vaidik and Foley concur.

**Weissmann, Judge.**

[1] Thirteen-year-old T.W. (Child) was a child in need of services (CHINS) and a ward of the Indiana Department of Child Services (DCS) when the juvenile court adjudicated her a delinquent child and granted her wardship to the Indiana Department of Correction (DOC). The court thereafter terminated DCS's wardship and closed Child's CHINS case, referring to the closure as a "discharge" of Child. On appeal, Child claims this purported discharge is void because the juvenile court lost subject matter jurisdiction over the CHINS case when it granted her wardship to DOC. We agree. But setting aside the purported discharge of Child, we view the court's closure of the CHINS case as a proper dismissal for lack of subject matter jurisdiction. We therefore affirm.

## Facts

[2] Child's biological parents had their parental rights terminated when Child was 3 years old. Though Child was adopted by her grandmother following the termination, Grandmother passed away when Child was 11 years old. Child's aunt therefore became Child's de facto custodian.

[3] Around the time of Grandmother's death, Child underwent a series of psychiatric hospitalizations due to hallucinations, self-harm, and both suicidal and homicidal ideations. Child's medical providers recommended Child undergo acute inpatient psychiatric treatment but were unable to find an appropriate placement. DCS therefore filed a petition alleging Child was a CHINS. Aunt admitted to the petition's allegations, and the juvenile court

adjudicated Child a CHINS. The court later entered a dispositional decree by which it granted wardship of Child to DCS and approved Child's initial placement at Damar Services for psychological evaluation.

[4] Among other things, the clinical psychologist who evaluated Child at Damar observed:

> [Child] exhibits severe recurrent temper outbursts that are grossly out of proportion in intensity and duration to the situation in which she is responding. She becomes angered and manifests verbal and/or behavioral outbursts in the form of verbal rages and physical aggression towards others and property.

App. Vol. II, p. 124. The psychologist diagnosed Child with "Disruptive Mood Dysregulation Disorder" as well as other mental health issues. *Id.* at 125. And due to Child's "highly destructive" and "dangerous behaviors," the psychologist recommended that Child be placed in a "restrictive," "structured," and "secure" residential treatment facility. *Id.*

[5] Child was placed at Crossroad Child & Family Services in April 2022. A month later, Child was arrested for twice assaulting a Crossroad staff member. The State soon filed a delinquency petition alleging Child engaged in acts that would be Class B misdemeanor battery if committed by an adult. After a fact-finding hearing, the juvenile court adjudicated Child a delinquent and determined that DCS would be the lead agency in supervising Child's dual

status.[1] When the juvenile court later issued its dispositional decree, Crossroad would no longer accept Child's placement. Therefore, the court granted DOC temporary wardship of Child "for housing" until a new residential or hospital treatment facility could be found. *Id.* at 224. Child, however, "remain[ed] a ward of [DCS]" in the CHINS case and subject to "DCS' custody and supervision," according to the court. *Id.*

[6] Child successfully appealed her DOC commitment, but DCS was unable to find a less restrictive treatment facility for her.[2] The juvenile court was thus forced to return Child to Aunt's care in June 2023. In a separate proceeding a month later, the court appointed Aunt as Child's guardian. Child, however, refused to participate in the intensive outpatient services ordered by the court, and her erratic and threatening behavior soon resulted in another series of psychiatric hospitalizations and the commission of more delinquent acts.

[7] In August 2023, the State filed a delinquency petition alleging Child engaged in acts that, if committed by an adult, would be: (1) Level 6 felony intimidation; (2) Level 6 felony attempted battery against a public safety official; (3) Class A misdemeanor criminal mischief; and (4) Class A misdemeanor resisting law enforcement. After a fact-finding hearing, the juvenile court again adjudicated

---

[1] Indiana Code § 31-41-1-2(1) defines a "Dual Status Child" as "a child who is alleged to be or is presently adjudicated to be a [CHINS] . . . and is alleged to be or is presently adjudicated to be a delinquent child . . . ."

[2] In reversing Child's first DOC commitment, this Court remanded with instructions for the juvenile court to "find a placement for T.W. at either a residential or hospital setting appropriate for her within thirty days." *T.W. v. State*, Case No. 22A-JV-2350 (Ind. Ct. App. Apr. 4, 2023) (mem.), *trans. denied*.

Child a delinquent and granted DOC temporary wardship of Child "for housing."[3] *Id.* at 165. The court also recommended that "[DOC] conduct a comprehensive assessment of [Child's] individual needs . . . to determine the most appropriate treatment plan and treatment programs within the [DOC] Division of Youth Services." *Id.* But unlike in its prior dispositional decree, the court was silent as to DCS's wardship of Child in the CHINS case.

[8] DCS soon filed a Request for Wardship Termination, asking the juvenile court to terminate DCS's wardship of Child and to close the CHINS case. In support of its Request, DCS claimed: "Permanency for the Child has been achieved through [Aunt's] Guardianship"; "[Child] is currently at [DOC] Juvenile Division"; and "there are no safety concerns or services being offered by [DCS] which warrant keeping the case open." App. Vol. III, p. 171.

[9] The juvenile court granted DCS's Request the same day and, in its written Order on Wardship Termination, further decreed:

1. Permanency for the Child has been achieved through an approved permanency plan of Guardianship.

2. Jurisdiction in this matter is hereby terminated without prejudice and this cause of action is ordered closed. Any hearings currently scheduled in this matter are hereby vacated.

---

[3] This Court affirmed Child's second DOC commitment on appeal. *T.W. v. State*, Case No. 23A-JV-2666 (Ind. Ct. App. May 10, 2024) (mem.).

*Id.* at 173.

[10] Child filed a motion to correct error, raising several substantive and procedural challenges to the juvenile court's Order on Wardship Termination. The court denied Child's motion, and Child appeals.

## Discussion and Decision

[11] In denying Child's motion to correct error, the juvenile court characterized its Order on Wardship Termination as a "discharge" of Child from the CHINS case. App. Vol. III, p. 212. Both parties therefore proceed on appeal as though the court ordered Child's discharge under Indiana Code § 31-34-21-11. That statute provides: "When the juvenile court finds that the objectives of the dispositional decree have been met, the court shall discharge the child and the child's parent, guardian, or custodian." Ind. Code § 31-34-21-11.

[12] Child argues that the juvenile court's purported discharge of Child is void because the court lost subject matter jurisdiction over Child's CHINS case when the court granted wardship of Child to DOC. We agree. But the court's Order on Wardship Termination also acted as a dismissal of the CHINS case for lack of subject matter jurisdiction.

## A.  The Juvenile Court Lost Subject Matter Jurisdiction

[13] "Subject matter jurisdiction refers to a court's constitutional or statutory power to hear and adjudicate a certain type of case." *D.P. v. State*, 151 N.E.3d 1210, 1213 (Ind. 2020). It cannot be waived or conferred by agreement, and its

absence can be raised at any time. *In re Adoption of L.T.*, 9 N.E.3d 172, 175 (Ind. Ct. App. 2014); *Albright v. Pyle*, 637 N.E.2d 1360, 1360 (Ind. Ct. App. 1994). "If the parties do not question [the lack of subject matter jurisdiction], the trial court or Court of Appeals is required to consider the issue sua sponte." *Albright*, 637 N.E.2d at 1360.

[14] By statute, juvenile courts have "exclusive" subject matter jurisdiction over both CHINS and delinquency cases. Ind. Code § 31-30-1-1(a)(2). That jurisdiction generally "continues" until the child turns 21, but it ceases if: (1) "the court discharges the child and the child's parent, guardian, or custodian at an earlier time"; or (2) "guardianship of the child is awarded to the department of correction." Ind. Code § 31-30-2-1(a).[4]

[15] Here, the juvenile court was divested of subject matter jurisdiction over Child's CHINS case when the Court granted wardship of Child to DOC. *See* Ind. Code § 31-30-2-1(a)(2). The court therefore lacked subject matter jurisdiction when, later, it purportedly discharged Child from the case under Indiana Code § 31-34-21-11.

---

[4] Indiana's Juvenile Code does not define the term "guardianship," but it defines a "guardian" as "a person appointed by a court to have the care and custody of a child or the child's estate, or both." Ind. Code § 31-9-2-49(b). Similarly, the Juvenile Code defines "wardship" to mean "the responsibility for temporary care and custody of a child by transferring the rights and obligations from the child's parent, guardian, or custodian to the person granted wardship." Ind. Code § 31-9-2-134.5(a). Because Indiana Code § 31-37-19-1 specifically authorizes a juvenile court to grant "wardship" of a delinquent child to DOC under certain circumstances, we consider that term to be interchangeable with "guardianship" as used in Indiana Code § 31-30-2-1(a)(2).

## B. The Juvenile Court's Purported Discharge Is Void

When a court lacks subject matter jurisdiction, any decision it makes on the merits of the case is void. *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind. 1994). A child's discharge from a CHINS case under Indiana Code § 31-34-21-11 requires a finding that "the objectives of the dispositional decree have been met." It is, thus, a decision on the merits of the CHINS case. *Cf. In re G.P.*, 4 N.E.3d 1158, 1168 n.10 (Ind. 2014) (suggesting DCS can only initiate new CHINS case once child is "discharged"); *In re A.T.*, 889 N.E.2d 365 (Ind. Ct. App. 2008) (holding juvenile court may not set aside "discharge" of child from CHINS case); *see generally Matter of Eq.W.*, 124 N.E.3d 1201, 1211 (Ind. 2019) (ruling claim preclusion branch of res judicata applies to CHINS proceedings).

Because the juvenile court lacked subject matter jurisdiction over the CHINS case when it purportedly discharged Child under Indiana Code § 31-34-21-11, that decision is void.

## C. The Juvenile Court Had Authority to Dismiss the Case

A court without subject matter jurisdiction over a case still has inherent authority to dismiss the case based on that lack of jurisdiction. *Ind. Fam. & Soc. Servs. Admin. v. Legacy Healthcare, Inc.*, 756 N.E.2d 567, 572 (Ind. Ct. App. 2001) ("When there is a lack of subject matter jurisdiction, the court is without jurisdiction to do anything in the case except to enter an order of dismissal."). This is because "[d]ismissal for lack of subject matter jurisdiction is not adjudication on merits nor is it res judicata." *Perry v. Stitzer Buick GMC, Inc.*, 637

N.E.2d 1282 (Ind. 1994). It simply holds the matter in "abatement," allowing its pursuit at another time, in another place, or in another form. *Albright v. Pyle*, 637 N.E.2d 1360, 1363 (Ind. Ct. App. 1994).

[19] Setting aside the juvenile court's purported discharge of Child, the court's Order on Wardship Termination still decreed: "Jurisdiction in this matter is hereby terminated *without prejudice* and this cause of action is ordered closed." App. Vol. III, p. 173 (emphasis added). We view this as a dismissal of the CHINS case for lack of subject matter jurisdiction, which we affirm.

## D. The Juvenile Court May Reinstate Jurisdiction

[20] To the extent Child is concerned that dismissing the CHINS case for lack of subject matter jurisdiction precludes the juvenile court from addressing Child's needs upon her release from DOC, we note that the court has statutory authority to reinstate its jurisdiction under such circumstances. *See* Ind. Code §§ 31-30-2-2, -3; *cf. A.R. v. State*, 196 N.E.3d 289, 295 (Ind. Ct. App. 2022) (discussing same reinstatement authority in juvenile delinquency context). Specifically, Indiana Code § 31-30-2-2 provides:

> If the department of correction is awarded guardianship of a child under section 1(a)(2) of this chapter . . . , the department of correction shall notify the court awarding the guardianship when the department will release the child from the department's custody. The notification must be sent to the court at least ten (10) days before the child's release.

And Indiana Code § 31-30-2-3 provides:

> After receiving notification under section 2 of this chapter . . . , a juvenile court may within thirty (30) days after notification, on the court's own motion, reinstate jurisdiction over the child for the purpose of modifying under IC 31-34-23 or IC 31-37-22 the court's original dispositional decree.

*See also* Ind. Code § 31-30-2-4(a) (allowing DOC to petition juvenile court to reinstate jurisdiction over a CHINS case to modify court's CHINS decree).

## Conclusion

[21] For the reasons set forth above, we affirm the juvenile court's dismissal of Child's CHINS case for lack of subject matter jurisdiction.

Vaidik, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Joel C. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana


ATTORNEY FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana